## KELLY v. DUKE POWER CO.
### No. 4307.

Circuit Court of Appeals, Fourth Circuit.
June 6, 1938.

Brock Barkley, of Charlotte, N. C. (H. C. Jones and Goebel Porter, both of Charlotte, N. C., on the brief), for appellant.

John M. Robinson, of Charlotte, N. C. (W. S. O'B. Robinson, Jr., and W. B. McGuire, Jr., both of Charlotte, N. C., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and HAYES, District Judge.

HAYES, District Judge.

This is a case started in the state court of North Carolina to recover damages of Duke Power Company for the wrongful death of J. A. Kelly, an employee of Atlantic Ice and Coal Company at Charlotte, N. C. The case was removed to the United States District Court on the ground of diversity of citizenship.

At the close of plaintiff's evidence motion to dismiss as of nonsuit was made by the defendant and overruled to which exception was taken, and at the close of all of the evidence the motion was again made and sustained, and from a judgment dismissing the action plaintiff appeals.

Kelly was found dead on the roof of the power house of Atlantic Ice & Coal Company a few minutes after he began work. He had been electrocuted but no one saw how it happened. It appears that two steel girders extend from the side walk up the brick wall to the roof—a distance of ten feet—and about six feet above the roof. Between these two girders is a platform protruding out over the street about 18 inches on which are stationed the transformers. At the top of the girders is a cross arm at which point the Power

Company furnished and installed its wires —called incoming wires—carrying a voltage of 2300. The Ice Company furnished, installed and maintained the wires from the cross arm over into its plant where a part of the current was used operating its machinery; the remainder returned to the roof of the power house by wires leading to the three wires attached to the transformer frame. These wires ran horizontally between the two steel girders and above the transformers, being about three and one half feet above the roof. The wires and transformers belonged to the Ice Company. The top wire where it was attached to the steel girder was bare at the end where it had been twisted around itself to tie it to the insulator. Fresh paint was found within six or eight inches of the naked wire. The exposed end was at such a distance from the fresh paint that if a man hit a stroke with the paint brush, the wire would get him along the base of the hand. Deceased was burned on the base of his hand.

The evidence tended to show there were some ragged places in the insulation on the incoming wires. But fresh paint had been applied only on the outside face of the steel girder over a space about twelve inches long, and was closer to the end of wire above described.

The uncontradicted evidence shows that the deceased's foreman on Saturday before the fatal accident on Monday told Kelly to paint the end of the building and the steel girders up to the platform on which the transformers were stationed— pointing out the place—and warned him not to get on the roof or near the wires because it was dangerous; that they would have the current cut off when he got ready to paint around the transformers. The deceased climbed a ladder in order to get on the roof and was painting the girder above the transformer platform when he came in contact with the current that killed him.

■ The plaintiff received workman's compensation from Atlantic Ice & Coal Company and now urges error because the trial judge non-suited the action against the Power Company. Of course the law of North Carolina controls. Erie R. Co. v. Tompkins, 58 S.Ct. 817, 82 L.Ed. —, 114 A.L.R. 1487, decided April 25, 1938.

■ If it could be assumed that the defendant was guilty of negligence in any particular, it is clearly established by the evidence that the proximate cause of the decedent's death was his own want of due care, and the nonsuit was proper. Pope v. Atlantic Coast Line R. Co., 195 N.C. 67, 141 S.E. 350. In that case the railroad company was negligent but its negligence was not the proximate cause of the injury. The plaintiff's intestate disregarded the instructions of his foreman and unnecessarily exposed himself to a danger against which he was fully warned. Had he obeyed the instructions by remaining on the ground instead of getting on top of the power house, he would not have been injured. The violation of the instructions was the proximate cause of his injury. The facts here are almost identical with those in Murphy v. City of Charlotte, 174 N.C. 771, 94 S.E. 299, in which a nonsuit was sustained.

It is urged by appellant that a nonsuit should not be allowed on the ground of contributory negligence where it does not appear from plaintiff's evidence, relying on Shives v. Eno Cotton Mills, 151 N.C. 290, 66 S.E. 141, in which there was no evidence of contributory negligence from plaintiff's evidence and very little from the entire evidence; Wright v. Southern R. Co., 155 N.C. 325, 71 S.E. 306, where plaintiff's evidence established contributory negligence; Thompson v. Purcell Construction Company, 160 N.C. 390, 76 S.E. 266, where a nonsuit was ordered on plaintiff's evidence that he knew of an opening between two railroad tracks before he attempted to cross after dark and fell into the open space; and Lapish v. Director General, 182 N.C. 593, 109 S.E. 852, where there was evidence of no contributory negligence by plaintiff and conflicting evidence by defendant of contributory negligence. But these cases have no application here. Plaintiff's intestate was doing what no prudent man would have done. In the light most favorable to the plaintiff, his intestate got on top of the Ice Company's power house and was painting a steel girder to which the wires were attached, moving a wet paint brush within six or eight inches of the naked end of the electric wire. There is no evidence to show that he had any orders to be in that place even if we ignore the uncontradicted evidence that he was ordered not to do so. His careless act was the proximate cause of his death. Thompson v. Purcell Construction Company, supra.

In Rushing v. Southern Public Utilities Company, 203 N.C. 434, 166 S.E. 300, it was held that "conceding, but not deciding, that * * * defendant was negligent in transmitting into the house 'excessive voltage' over 110, the normal voltage, yet plaintiff's intestate * * * was * * * guilty of contributory negligence". He was found dead on the basement floor with a pair of pliers in his hands and the uninsulated wire cut. A nonsuit has been sustained in King v. Manetta Mills Company, 210 N.C. 204, 185 S.E. 647, on the contributory negligence of plaintiff's intestate who pulled a radio wire across an electric wire.

 In the federal practice a motion for a judgment as of nonsuit is treated as a demurrer to the evidence and with like effect. Teer v. Geo. A. Fuller Company, 4 Cir., 30 F.2d 30, 33; J. B. McCrary Engineering Company v. White Coal Power Company, 4 Cir., 35 F.2d 142. In either case the court must resolve all conflicts in the evidence against the defendant, but it is likewise the duty of the court to take the case from the jury when the evidence is legally insufficient to support a verdict. Chesapeake & Ohio Railroad Company v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983.

The nonsuit was properly granted because the evidence was insufficient to show ownership or control by the defendant of the wires causing the death of plaintiff's intestate. The evidence convinces us that the deceased's death was caused by a wire owned and controlled by the Ice Company and over which defendant had no control and for which it owed no duty to the plaintiff under the circumstances of this case. The plaintiff must show more than a mere conjecture of ownership or control and the breach of some duty owed by the defendant to the plaintiff. This he has utterly failed to do. Merritt v. Tide Water Power Company, 205 N.C. 259, 171 S.E. 90. To the same effect see Pennsylvania Railroad Company v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819, and Spain v. Powell, 4 Cir., 90 F.2d 580. In the latter case Judge Soper, speaking for the court, said (page 582):

"Under these circumstances, the cause of the accident remains a matter of conjecture. * * * We have then an uncertainty as to the inferences which may fairly be drawn from the evidence, and the judgment as a matter of law must go against the party upon whom rests the necessity of showing that he is entitled to recover."

We do not minimize the humane rule so ably expressed by Judge Soper in Smith v. Appalachian Electric Power Co., 4 Cir., 74 F.2d 647, 651, that "One who sets in motion so destructive a force is bound to exercise a degree of care commensurate with the danger involved, at places where others have the right to be, for work, business, or pleasure, if injury to such persons is reasonably to be apprehended." See Benton v. North Carolina Public Service Corporation, 165 N.C. 354, 81 S.E. 448. But this principle applies only where the defendant owns or retains control or use over the wires from which the injury flows.

For the reasons stated, we deem it unnecessary to consider other grounds for sustaining the judgment of nonsuit. We find no error.

Judgment below affirmed.